**Eric SIMMONS, # 36382–118 Petitioner,**

v.

**Bobby SHEARIN, Warden Respondent.**

**No. CIV.A. CCB–03–1048.**

United States District Court,
D. Maryland.

Dec. 23, 2003.

Eric Simmons, Cumberland, MD, Pro se.

Allen F. Loucks, Office of the United States Attorney, Baltimore, MD, for Respondent.

## *MEMORANDUM*

BLACK, District Judge.

Petitioner Eric Simmons filed this application for habeas corpus relief under 28 U.S.C. § 2241 on April 10, 2003. He alleges that the United States Parole Commission ("USPC") failed to comply with the rules and regulations governing administration of parole to D.C. code offenders. According to Simmons's petition, the USPC denied him due process when it assessed him under a new set of guidelines and salient factor scoring that resulted in an upward departure of his parole rehearing date from the 15 to 22 months set off originally imposed by the D.C. Parole Board to a more severe guideline range of 100 to 148 months. Petitioner further complains that the USPC's conduct has resulted in impermissible double counting. (Paper No. 1.)

On May 9, 2003 Respondent Shearin filed a response to the petition for habeas corpus relief.[1] (Paper No. 4.) Petitioner has filed a reply. (Paper No. 5.) Upon review of the application for habeas relief, the court finds no hearing necessary. *See* Local Rule 105.6.

The District of Columbia Superior Court sentenced Simmons on March 1, 1989 to a 10 to 30 year sentence for armed robbery which was ordered to run consecutively to a parole violation term of 2,042 days. Petitioner was paroled on March 17, 1996. Approximately three years later, on April 9, 1999, a warrant for Simmons's arrest was issued for kidnapping and other offenses. The warrant was executed on October 4, 1999 and on June 26, 2000 the D.C. Parole Board issued an order revoking Simmons's parole. The Board's order further directed that Petitioner be considered for re-parole on January 4, 2001. (Paper No. 4, Exhs. A–D.)

Petitioner was subsequently transferred to the Bureau of Prisons. A USPC hearing examiner prepared a pre-hearing assessment on July 26, 2001 and the rehearing was later conducted on September 19, 2001.[2] The re-parole guidelines of the USPC (28 C.F.R. § 2.21 and § 2.20) were applied to calculate Simmons's guideline range of 100 to 148 months based upon a Category Seven offense severity for kidnapping and a Salient Factor score of 2. As a result of Petitioner's cooperation with the government with respect to another criminal matter, the examiner recommended a decision below the guidelines by 12 months. On October 11, 2001 the USPC issue a Notice of Action continuing Simmons to a presumptive re-parole on August 7, 2006 after the service of 88 months. The Notice of Action advised Pe-

---

**1.** Petitioner also named the USPC as a Respondent to this case. Counsel for Respondent Shearin notes that the Commission is not an appropriate respondent in this habeas corpus action because it is not the "person having custody of the person detained." 28 U.S.C. § 2243. Counsel, therefore, requests that the USPC be dismissed from the case. The request shall be granted. *See Boone v.*

*U.S. Parole Comm'n,* 648 F.Supp. 479, 480 (D.Md.1986); *Bowers v. U.S. Parole Comm'n,* 746 F.Supp. 617, 619 (E.D.Va.1990); *Guerra v. Meese,* 786 F.2d 414, 416 (D.C.Cir.1986).

**2.** The examiner at the rehearing noted that it was not clear why Petitioner's rehearing had not been held prior to September 19, 2001.

titioner that a decision below the guideline range of 100 to 148 months was made based on his "superior program achievement" and "excellent work report." (Paper No. 4, Exhs. B, D. E.)

Pursuant to the National Capital Revitalization and Self–Government Improvement Act of 1997, sole authority over all parole release decisions regarding District of Columbia Code felony offenders convicted in Superior Court lies with the U.S. Parole Commission. Pub.L. 105–33, 111 Stat. 745, codified at D.C.Code § 24–131(a)(2) (2001) (effective not later than one year after date of enactment, Aug. 5, 1997). According to the terms of the Revitalization Act, after August 1998 the Board of Parole no longer had jurisdiction to conduct parole eligibility hearings for the District's felon inmates. The Revitalization Act directed the United States Parole Commission to start performing this function. Consequently, felony offenders convicted in Superior Court who are parole eligible or under parole supervision now have their parole decisions made by the USPC. The Superior Court exercises such authority over misdemeanants. D.C.Code §§ 24–131(a)(2)–(3). Effective August 5, 2000, the USPC was given the remaining responsibilities of the former D.C. Board of Parole regarding supervision of parolees and the revocation of parole release violations. § 11231(a)(2) of the Act, codified at D.C.Code § 24–131(a)(2).

■ With regard to the claims raised in the instant petition, the court notes that a federal court may review decisions of the Parole Commission for abuse of discretion. The relief a court may grant, however, is limited to correcting the abuses or wrongful conduct within a specific time period. *See Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2nd Cir.1976).

Here, Petitioner contends that he had a liberty interest in the expectation of being paroled within the guideline range set by the D.C. Parole Board of 15–22 months. He complains, however, that the USPC not only delayed his parole rehearing date by eight months but impermissibly set off his presumptive parole date to August 7, 2006, a date well beyond the 15–22 months guideline range suggested by the D.C. Parole Board.

■ Petitioner's contention that he had a liberty interest in the expectation of parole within the time frame set by the D.C. Parole Board is incorrect. The law is settled that the Constitution itself does not create a liberty interest in parole; such an interest exists only if some independent source such as state law (D.C. law in this case) creates one. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7–8, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Paoli v. Lally,* 812 F.2d 1489, 1492 (4th Cir.1987). The D.C. parole statute and regulations, applicable to D.C. offenders even after they are transferred to the jurisdiction of the USPC, do not create any liberty interest in parole. *Ellis v. District of Columbia,* 84 F.3d 1413, 1420 (D.C.Cir.1996); *Sparks v. Gaines,* 144 F.Supp.2d 9, 15 (D.D.C.2001) (after revocation of parole, D.C. parole violator has no liberty interest in parole). While the Revitalization Act requires the USPC to follow the existing parole laws and rules of the D.C. Parole Board, the Commission, much like the Parole Board before it, has the power to "amend and supplement" the D.C. parole rules. D.C.Code § 24–131(a)(1). *See Muhammad v. Mendez,* 200 F.Supp.2d 466, 470 (M.D.Pa.2002). Consequently, the USPC could supplement the D.C. Parole Board's regulations by incorporating a new guideline system in order to guide its decisions concerning re-parole applicable to inmates like Petitioner. Moreover, under the old D.C. Board of Parole rules, the

guideline ranges used at revocation hearings provided a time frame for when a prisoner was entitled to a re-parole hearing. The guideline ranges did not suggest a date when the inmate would actually be re-paroled. *See Allston v. Gaines,* 158 F.Supp.2d 76, 82–83 (D.D.C.2001). Thus, neither the old D.C. Board of Parole rules nor the Revitalization Act created the sort of mandatory entitlement that gives rise to a liberty interest protected by the Due Process Clause. *See Ellis,* 84 F.3d at 1417–18. The D.C. Board of Parole's guidelines only determined when Simmons's first rehearing should be; the grant of re-parole remained within the discretion of the Board, and the USPS inherited that discretion.

■ Petitioner alleges that he was denied due process when his rehearing was conducted in October 2001 which was eight months past the latest rehearing date scheduled by the D.C. Parole Board. As previously noted, Petitioner has no liberty interest in parole, so the delay did not violate due process. Furthermore, after his transfer into the custody of the Bureau of Prisons, a D.C. Parole Board rehearing order is not binding on the USPC. *See Morgan v. District of Columbia,* 618 F.Supp. 754, 756 (D.D.C.1985).

■ Petitioner alleges that the USPC "circumvented" the guidelines utilized by the D.C. Parole Board in arriving at its rehearing date parameters by using "a new category and Salient Factor Score" which resulted in "double counting." (Paper No. 1, Attachment, pg. 2.) According to Petitioner, "the USPC relied on the same aggravating factors already accounted for at the initial violation hearing to depart upward from the 15 to 22 months." (Paper No. 1 at pg. 5.)

"Double counting occurs when the Commission considers as a basis for departing from the guidelines the same factors it used either to place the inmate in a particular severity category or to calculate his Salient Factor Score, or both." *Muhammad,* 200 F.Supp.2d at 472. With regard to Petitioner, the USPC did not exceed the applicable guidelines, but rather, recommended a guideline range 12 months below the applicable guideline range of 100 to 148 months based on his cooperation with the government. To the extent Petitioner is simply reiterating his argument that the USPC abused its discretion by exceeding the 15–22 months guideline range established by the D.C. Parole Board, the court has already found that the USPC was free to supplement the D.C. Parole Board's regulations to incorporate a new guideline system with respect to making decisions concerning re-parole and consequently, this claim is dismissed on the same basis.

■ To the extent Petitioner complains that the USPC violated the *Ex Post Facto* Clause by using its own guidelines to determine his parole eligibility, the court concludes that this claim entitles him to no relief. To demonstrate that the USPC's application of its guidelines violated the *Ex Post Facto* Clause, Petitioner must show that the guidelines "produce[ ] a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dep't of Corrections v. Morales,* 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); *see also Blair–Bey v. Quick,* 159 F.3d 591, 591–92 (D.C.Cir. 1998). Petitioner has made no such showing. The D.C. Parole Board's scoring system created by the 1987 guidelines simply formalized the method by which it exercised its considerable discretion to grant parole. *Davis v. Henderson,* 652 A.2d 634, 634 (D.C.1995). The USPC also exercises broad discretion, and several circuits accordingly have concluded that the USPC guidelines are not "laws" within the meaning of the *Ex Post Facto* Clause. *See, e.g., DiNapoli v. Northeast Reg'l Parole Comm'n,* 764 F.2d 143, 145–47 (2nd Cir.

1985); *Sheary v. U.S. Parole Comm'n*, 822 F.2d 556, 558 (5th Cir.1987); *Dufresne v. Baer*, 744 F.2d 1543, 1549–50 (11th Cir. 1984); *but see Forman v. McCall*, 776 F.2d 1156, 1159 (3rd Cir.1985) (noting that "it remains the law of this circuit" that "if administered without sufficient flexibility, the guidelines could be considered laws for ex post facto purposes," but observing that "[t]his position has been rejected by every other circuit that has addressed the issue"). Because discretion was the key factor in determining Petitioner's parole eligibility under both the D.C. Parole Board and the USPC, Petitioner cannot establish that the change in guidelines created a risk of increased punishment sufficient to state an *Ex Post Facto* Clause challenge.

Petitioner has also failed to show that application of the USPC's guidelines "yields results materially harsher than those ordinarily occurring under the prior regime." *Blair–Bey v. Quick*, 159 F.3d at 592. He appears to contend that the *Ex Post Facto* Clause has been violated because under the D.C. Parole Board's guideline range of 15 to 22 months, he would have fallen into the parole eligibility category on the date when he initially became eligible for parole, whereas under the USPC's guidelines, he did not fall into that category. This distinction, however, is one without a difference inasmuch as Petitioner had not demonstrated that he would have fared better under the D.C. Parole Board's guidelines. The D.C. Parole Board still had the authority to deny Petitioner parole and he has not shown that such action would not have occurred. Thus, the court finds that the USPC's application of its guidelines to Petitioner did not violate the *Ex Post Facto* Clause.

For the foregoing reasons, the Petition for Writ of Habeas Corpus will be denied and dismissed with prejudice.

A separate Order follows.

### *ORDER*

Upon consideration of Petitioner's application Habeas Corpus Relief under 28 U.S.C. § 2241, Respondent's response, and Petitioner's reply, it is for the reasons set forth in the accompanying Memorandum, this 23rd day of December, 2003 **ORDERED** that:

1. Respondent United States Parole Commission **IS DISMISSED** as a party to this action;

2. the Petition is hereby **DENIED AND DISMISSED, WITH PREJUDICE**, on the merits;

3. the Clerk of the Court **CLOSE** this case; and

4. the Clerk of Court **SEND** a copy of this Order, together with the foregoing Memorandum, to Petitioner and counsel of record.